**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DANIEL G. PAPPAS**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**MITCH GERBER**
DCS, Allen County Office
Fort Wayne, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED

Jul 05 2012, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE ) 
INVOLUNTARY TERMINATION OF THE ) 
PARENT-CHILD RELATIONSHIP OF ) 
A.L.W., MINOR CHILD, and ) 
 ) 
K.B. (MOTHER), ) 
 ) 
    Appellant-Respondent, ) 
 ) 
        vs. )   No. 02A04-1111-JT-684
 ) 
INDIANA DEPARTMENT ) 
OF CHILD SERVICES, ) 
 ) 
    Appellee-Petitioner. ) 

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause No. 02D08-1008-JT-288

**July 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

This case involves a sadly familiar circumstance in which a mother exhibits patterns of substance abuse and neglect so protracted as to result in the termination of her parental rights. When the Allen County Department of Child Services ("DCS") found K.B. ("Mother") living with her two-year-old daughter, A.L.W., in an unsanitary home that lacked running water, gas, heat, and adequate food, DCS filed a petition to have A.L.W. designated a child in need of services ("CHINS"). The trial court granted the petition, removed A.L.W. from the home, and ordered Mother to participate in substance abuse rehabilitation and other services aimed at reunifying her with A.L.W. After several instances of noncompliance by Mother, DCS sought to have her parental rights terminated and to have A.L.W. adopted by an aunt. After the trial court conducted hearings and heard recommendations from DCS workers and the court-appointed special advocate ("CASA"), the trial court issued an order terminating Mother's parental relationship with A.L.W.

Mother now appeals the termination order, claiming that the evidence is insufficient to support the trial court's conclusion that there is a reasonable probability that the conditions that led to A.L.W.'s removal would not be remedied. Finding no error, we affirm.

**Facts and Procedural History**

On October 20, 2009, Mother was living with A.L.W. in a home that lacked running water, gas, and heat. There was little food in the home, and the home contained unattended human waste. Mother had a history of illegal drug use, alcohol and cocaine addiction, and neglect of an older child.

2

On October 21, 2009, DCS filed a notice of intent to initiate CHINS proceedings concerning A.L.W. The next day, the trial court held a hearing and found probable cause for the CHINS determination. Mother failed to appear. On November 17, 2009, DCS filed an amended CHINS petition. On January 5, 2010, the trial court held a hearing at which Mother appeared and admitted to certain CHINS allegations. The trial court adjudicated A.L.W. a CHINS and conducted a dispositional hearing. The court issued a parent participation plan and placed A.L.W. with relatives. The plan required Mother to refrain from criminal activity; maintain clean, safe, and appropriate housing; notify DCS of changes in household composition, housing, and employment; cooperate with DCS, the guardian ad litem ("GAL"), and/or the CASA by attending conferences, maintaining contact, and accepting in-home visits; provide pertinent background information to DCS; provide A.L.W. with clean, appropriate clothing; cooperate with child placement rules; obtain a drug and alcohol assessment, a family functioning assessment, and a psychological assessment and follow all recommendations from each assessment; obtain and maintain suitable employment, obtain and follow all recommendations; submit to random drug screenings, urinalysis testing, and oral swabs as required; refrain from all use of alcohol, illegal drugs, and other substance abuse; take all medications as prescribed; provide appropriate caretakers for A.L.W.; and attend and participate in all visits with A.L.W. DCS Ex. 10.

At hearings in April and July, 2010, the trial court found Mother to be in noncompliance with the parent participation plan. As a result, DCS changed the permanency plan from reunification to termination of parental rights with adoption. On August 5, 2010,

3

DCS filed a termination petition. On January 12, 2011, Mother entered a denial.[1] At a January 18, 2011 hearing, the trial court found that Mother had failed to satisfactorily participate in and/or complete required services and that she had tested positive for illegal substances during the current reporting period. The trial court maintained the permanency plan of termination and adoption and officially ordered custody modification to A.L.W.'s paternal aunt ("Aunt"). At a June 12, 2011 hearing, the trial court found that Mother had failed to obtain appropriate housing, had failed to participate in therapy, and had tested positive for illegal substances during the current reporting period. The trial court held evidentiary hearings in August 2011 and took the matter under advisement.

On November 10, 2011, the trial court issued an order terminating Mother's parental relationship with A.L.W. The trial court's findings of fact include the following:

6. The Mother appeared on January 5, 2010, and admitted that on or about October 20, 2009, the home in which she and the child resided was without water or gas utilities. The home was without heat except for that which was generated by the oven in the kitchen. The only liquid available for the child to drink was some frozen milk in the refrigerator. The mattress in the child's room was soaked with urine. The Mother admitted that she had used illegal drugs in the past and was addicted to cocaine. The child was adjudicated to be a CHINS under I.C. 31-34-1-1 and an immediate Depositional [sic] Hearing was held.

7. The child's removal from the parents' care and custody was continued and a parent participation plan was adopted ….

8. The child was moved from licensed foster care. She was originally placed with her aunt and uncle …. She was later placed with her paternal Aunt … with whom she has continued to reside.

---

[1] A.L.W.'s father, D.W. ("Father"), consented to termination of his parental rights and is not a participant in this appeal. We therefore address only the aspects of this case pertinent to Mother.

4

9.  On April 26, 2010, a Review Hearing was held in the underlying CHINS case. The Court found that the Mother had not completed her drug and alcohol assessment or the family functioning assessment. She had tested positive for cocaine. The child was continued in relative care.

10. A Permanency Hearing was held on July 22, 2010. The court found that the Mother was not in compliance with the terms of the Dispositional Decree and authorized a plan for the termination of parental right. The Permanency Plan was altered on January 18, 2011 to include a concurrent plan of custody modification to Aunt.

11. On June 30, 2011, a Periodic Review Hearing was held and the Court found that the Mother had tested positive for illegal drugs, had not participated in therapy, and had not demonstrated an ability to benefit from services.

12. The child's half sister, [M.K.], was adjudicated to be a [CHINS] for reasons of neglect on December 5, 2006 …. Under the Parent Participation Plan adopted in that case, the Mother was offered drug and alcohol assessment and parenting classes. A permanency Plan was adopted that provided for the modification of custody to [M.K.'s] father [Mi.K.]. Upon the grant of the modification of custody, the wardship was terminated. The mother exercises visitation with [M.K.]. However she is in arrears in her support obligation in an amount that exceeds $4000.00.

13. The child in this case has been diagnosed by Dr. Barbara Bader with Fetal Alcohol Syndrome and Cocaine Exposure. From the testimony of [Aunt], the Court finds that the child's condition requires that she be provided with special care. [A.L.W.] is enrolled in speech and occupational therapies. She requires constant monitoring because she senses no fear and will engage in risk[y] behaviors. She is on medication for Attention Deficit Disorder. The Mother has not participated in the child's therapies nor has she participated in any of the appointments with Dr. Bader.

14. [DCS] referred the Mother for a drug and alcohol assessment and rehabilitation services. In April 2010, the assessment was completed and the Mother was enrolled in a "Level II" substance abuse recovery program. That program required that the Mother attend therapy twice per week for a total of forty hours and enroll in a 12-step program. She

5

was also referred to group therapy. The Mother acknowledges that she has not completed her substance abuse program.

15. The Mother's referral for participation in the above referenced substance abuse program at CAP, Inc. was closed on or about October 2010 due to the Mother's failure to appear. In January 2011 services were re-instated but closed again in February owing to the Mother's noncompliance. A similar pattern followed in April, 2011. [DCS] again referred services in June, 2011 and the Mother completed a re-assessment at Cap, Inc. The Mother was directed to the intensive "Level III" program. She was obligated to attend therapy twice per week for seventy-two hours and enroll in AA or NA. The Mother has not yet completed the Level III program. She is participating in group but not individual therapy.

16. The Mother completed a Family Functioning Assessment and was directed to complete parenting classes, family and individual therapy, accept casemanagement [sic] services and participate in psychiatric care. The Mother admitted that she has not enrolled in counseling.

17. Not withstanding [sic] the directive that she follow the requirements for her psychiatric care, the Mother has not participated in her medication management since November 2010.

18. The child has been placed outside the outside the [sic] parent's home for more than fifteen (15) months of the most recent twenty-two (22) months and for more than six (6) months since the Dispositional Decree.

19. In the event parental rights are terminated [DCS] has an appropriate plan; that being adoption.

20. Rex McFarren the Director of the Allen County C.A.S.A. program has concluded that termination of the parent-child relationship is in the child's best interests. In support of that conclusion he cited various factors including the Mother's on-going issues with substance abuse and her failure to complete rehabilitation services. He also noted that the Mother's scores in the Child Abuse Potential Inventory (a test she completed as part of her psychological evaluation) were significant as it related to abuse, and maladaptive behaviors.

Appellant's App. at 14-16.

6

The trial court concluded in part as follows:

3.     In addition to the foregoing the court must find that there is reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or that continuation of the parent-child relationship poses a threat to the well being of the children …. By clear and convincing evidence the court determines that the reasons for placement outside the home of the parents will not be remedied. The Father has consented to the termination of his parent-child relationship. The Mother is an admitted alcoholic and has not completed rehabilitation services despite multiple referrals to providers by [DCS]. The Mother has an historic pattern of neglect. Services for her addictions were offered in a 2006 CHINS case for an elder child. That case did not result in reunification of the child into her care. Instead, the child was placed in the custody of her father. After more than fifteen months, the Mother has not completed services and is not yet ready for the child to be safely returned to her care.

4.     Termination must be in the child's best interests and the petitioner must have a satisfactory plan for the care and treatment of the children …. The Mother has not completed substance abuse rehabilitation services and has followed a pattern of minimal compliance with services that was also evident in the case involving an older sibling. She has not demonstrated an ability to benefit form [sic] services. By the termination of parental rights the child can be placed in a safe permanent home through adoption. The child's [CASA] has concluded that termination of parental rights is in the children's best interest. Thus the child's best interests are served by granting the petition to terminate the parent-child relationship. The adoption of the child is an appropriate plans [sic].

5.     [DCS] has thus proven by clear and convincing evidence that the allegations of the petitions are true and that the parent-child relationship should be terminated.

*Id*. at 16.

Mother now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Mother claims that the evidence is insufficient to support the termination of her parent-child relationship with A.L.W. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we apply a two-tiered standard of review. *In re M.W.*, 943 N.E.2d 848, 853 (Ind. Ct. App. 2011), *trans. denied*. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous where the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.* In conducting our review, we neither reweigh evidence nor judge witness credibility. *In re A.I.*, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), *trans. denied*. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.*

In *Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143 (Ind. 2005), our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

*Id.* at 147 (citations, quotation marks, and alteration omitted).

8

To obtain a termination of the parent-child relationship between Mother and A.L.W., DCS was required to establish:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard.

*Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.*

Specifically, Mother asserts that the record does not support the trial court's conclusion that a reasonable probability exists that conditions leading to A.L.W.'s removal will not be remedied.[2] When assessing whether there is a reasonable probability that conditions that led to the child's removal will not be remedied, we must consider not only the initial basis for the child's removal, but also the bases for continued placement outside the home. *In re A.I.*, 825 N.E.2d at 806. Moreover, "the trial court should judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied.* "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.* For example, the court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cnty. Office of Family & Children,* 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). In making its case, "DCS need not rule

---

[2] Mother also challenges the trial court's findings and conclusion that there is a reasonable probability that the continuation of her relationship with A.L.W. poses a threat to A.L.W.'s well-being. In response, we make two observations. First, the trial court did not make a specific conclusion concerning the threat to A.L.W.'s well-being. Second, Indiana Code Section 31-35-2-4(b)(2)(B) requires DCS to prove only *one* of the three circumstances listed. Because we find no error concerning the reasonable probability of unremedied conditions, we need not address the threat to the child's well-being.

out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). "[A] trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *Castro*, 842 N.E.2d at 372.

In her brief, Mother challenges only one of the trial court's findings of fact and one of its conclusions thereon. First, she asserts that the trial court erred in finding that at the January 2010 initial CHINS hearing, she "admitted that she had used illegal drugs in the past and was addicted to cocaine." Appellant's App. at 14. She argues that she was no longer a cocaine addict by the time of the January 2010 initial CHINS hearing, let alone by the time of the November 2011 termination order. Based on the trial court's other findings as well as its use of the phrase "in the past," we do not interpret the finding to implicate a current cocaine *addiction*. However, the record does implicate her current cocaine *use*. Some of the court's unchallenged findings specifically address the results of various drug screens as well as Mother's progress in the drug and alcohol treatment programs in which she was ordered to participate. Mother's testimony supports these findings. For example, at the termination hearing, she admitted to having two or three positive drug screens for cocaine since 2010. Tr. at 59, 62. We also note that she admitted to a current addiction to alcohol, stating that she was still suffering from alcohol addiction-related problems. *Id*. at 60-61. She also stated that as of two or three weeks before the termination hearing, she was drinking every other day. *Id*. at 61. Overall, the record shows that she failed to complete most of the drug and alcohol

11

rehabilitation programs as ordered. This supports the trial court's conclusions that Mother "has followed a pattern of minimal compliance" and that there is a reasonable probability that the reasons for placing A.L.W. outside the home will not be remedied because "Mother is an admitted alcoholic and has not completed rehabilitation services despite multiple referrals to providers." Appellant's App. at 16.

Mother also challenges the trial court's conclusion that she has "an historic pattern of neglect." *Id.* In so concluding, the trial court cited Mother's failure to complete substance abuse rehabilitation services ordered in a 2006 CHINS case concerning her older child, M.K. The court noted that Mother never accomplished reunification with M.K. and that M.K. was eventually placed in her father's custody. Mother disputes this conclusion because she was given visitation rights concerning M.K. She attempts to characterize visitation as reunification, essentially arguing that she is entitled to a similar disposition concerning A.L.W. However, we note that M.K.'s case was a CHINS proceeding and not a termination proceeding, and as such, the goals and analyses are distinct. *See In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010) (stating that termination is not merely a continuing stage of CHINS proceeding, and CHINS does not challenge competency of parent to continue her relationship with child). We further note that visitation does not amount to reunification in the sense of a permanency plan; instead, visitation is often an indicator of whether reunification is possible. *In re E.S.*, 762 N.E.2d 1287, 1292-93 (Ind. Ct. App. 2002).[3] Moreover, a CHINS

---

[3] Reunification is equated with preserving the family, and in CHINS proceedings, DCS is required to make reasonable efforts to preserve and reunify families. Ind. Code § 31-34-21-5.5(b).

adjudication focuses on the condition of the child, meaning that the child's physical or mental condition is seriously impaired or endangered as a result of the parent's neglect, inability, or refusal, to provide them with necessities. Ind. Code § 31-34-1-1; *In re N.E.*, 919 N.E.2d at 105. Standing alone, a CHINS proceeding does not establish culpability on the part of a parent. *Id.* Instead, it establishes the status of a *particular* child. *Id.* at 106. As such, the permanency plan for one child does not determine the permanency plan for a sibling.

Here, the record is replete with evidence concerning A.L.W.'s special needs. She was born with fetal alcohol syndrome and cocaine exposure, which cause her to engage in behaviors that require heightened supervision. Mother has not accompanied A.L.W. to her therapy appointments and has basically demonstrated an inability or unwillingness to even familiarize herself with A.L.W.'s unique needs, let alone attend to them. She has a pattern of failing to complete her own treatment programs, which does not bode well for her commitment to completing A.L.W.'s special needs therapy programs. Thus, the trial court did not err in concluding that there is a reasonable probability that the conditions that led to A.L.W.'s removal from Mother will not be remedied.

Finally, we note that the trial court's ultimate conclusion is supported by numerous unchallenged findings. Accordingly, we affirm the trial court's judgment terminating the parent-child relationship between Mother and A.L.W.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.

13