## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 28 2015, 8:39 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael D. Gross
Lebanon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the matter of:<br>B.S. and A.S., Children In Need of Services, and<br>M.S., | August 28, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No.<br>06A01-1501-JC-19 |
| v. | Appeal from the Boone Circuit Court;<br>The Honorable J. Jeffrey Edens, Judge;<br>The Honorable Sally E. Berish, Magistrate;<br>06C01-1404-JC-103<br>06C01-1405-JC-124 |
| The Indiana Department of Child Services, | |
| *Appellee-Petitioner.* | |

**May, Judge.**

[1] M.S. (Mother) appeals the adjudication of her children, B.S. and A.S. (Children), as Children in Need of Services (CHINS). She argues the Department of Child Services (DCS) did not provide sufficient evidence Children were CHINS. We affirm.

## Facts and Procedural History

[2] Mother gave birth to B.S. on September 25, 2012. On April 24, 2014, Lebanon Police received a report of an impaired person walking with a child. Police discovered Mother with B.S., who had not been fed or changed in a day. Officers observed Mother seemed "somewhat confused" and had difficulty "formulating her answers" to questions. (Tr. at 6-7.) Officers bought food for B.S. and Mother changed B.S.'s diaper on the officers' instruction. The officers took Mother and B.S. to where Mother was staying with friends in Lebanon and contacted DCS.

[3] DCS Family Case Manager Rachel Kenworthy conducted an assessment, transported Mother and B.S. back to their home in Thorntown, and established a safety plan with Mother and B.S. Mother consented to a drug test and tested negative. On April 25, DCS received a report Mother left B.S. with the friends with whom she had been staying and did not indicate when she would return. FCM Kenworthy, the family, and the police attempted to contact Mother to no avail. DCS detained B.S. because Mother could not be located and the family had prior DCS history. The trial court held a detention hearing regarding B.S.

on April 29, during which Mother indicated she was staying with a friend; FCM Kenworthy later determined Mother was homeless.

[4]     On May 11, 2014, Mother gave birth to A.S. DCS detained A.S. because Mother was homeless and had refused DCS assistance to find housing when discharged from the hospital. However, at the May 14 detention hearing, the trial court returned A.S. to Mother because Mother was living with her friend, R.W.

[5]     Sometime after A.S.'s birth, B.S. was diagnosed with two medical conditions involving his kidneys and genitalia that required surgery. Mother attended some appointments regarding the condition, but insisted at one point, "you're [DCS] liars and you want to take [B.S.'s] kidney." (Tr. at 80.) B.S. also has speech delays.

[6]     On June 6, DCS Family Case Manager Kristin Miller visited R.W.'s home to check on the living arrangements and A.S.'s well-being. R.W. expressed concern regarding A.S.'s health and A.S.'s diaper rash. R.W. also indicated Mother would leave A.S. for long periods of time with random caregivers who did not know where Mother was. R.W. reported Mother was dating D.Z., who had been convicted of child molesting. Mother confirmed she had a romantic relationship with D.Z. and sent him money while he was in prison.

[7]     Later on June 6, R.W. brought Mother to the DCS office to formulate a safety plan to deal with A.S.'s health problem, which turned out to be thrush, and A.S.'s diaper rash. Mother was verbally combative with DCS staff, though she

reluctantly signed the safety plan.  Before leaving, she engaged in a confrontation with another DCS staff member, during which Mother banged on a table, making A.S.'s "head bounce[] off the table."  (Tr. at 35.)  DCS detained A.S. at that time.  On June 10, the trial court conducted a detention hearing and ordered A.S. to remain in foster care with B.S.

[8]     The trial court held a fact-finding hearing and adjudicated the Children as CHINS.

# Discussion and Decision

[9]     DCS presented sufficient evidence Children were CHINS.  A CHINS proceeding is civil in nature, so DCS must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code.  *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010).  Ind. Code § 31-34-1-1 states:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

A CHINS adjudication "focuses on the condition of the child," and not the culpability of the parent. *In re N.E.*, 919 N.E.2d at 105. The purpose of finding a child to be a CHINS is to provide proper services for the benefit of the child, not to punish the parent. *Id.* at 106.

[10] When a juvenile court enters findings of fact and conclusions of law in a CHINS decision, we apply a two-tiered review. *Parmeter v. Cass County DCS*, 878 N.E.2d 444, 450 (Ind. Ct. App. 2007), *reh'g denied*. We first consider whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We may not set aside the findings or judgment unless they are clearly erroneous. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* We give due regard to the juvenile court's ability to assess witness credibility and we do not reweigh the evidence; we instead consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.* We defer substantially to findings of fact, but not to conclusions of law. *Id.*

[11] Mother argues DCS did not present sufficient evidence Children needed "care, treatment, or rehabilitation" they were not receiving that would be "unlikely to be provided or accepted without the coercive intervention of the court." Ind. Code § 31-34-1-1(2). Mother contends she has made "positive steps" since the beginning of the CHINS proceedings, and the court did not take into account that she was attending therapy and working on getting a stable income and housing when it adjudicated Children as CHINS. (Br. of Appellant at 8.)

[12]    The trial court found:

> The coercive intervention of the Court is necessary because two serious and previously undiagnosed medical conditions have been discovered in [B.S.] and said conditions require regular doctor appointments and monitoring[.]  Mother has exhibited no ability to provide reliable private or public transportation for herself and the Children.  Mother has had an ongoing relationship with [D.Z.], a convicted and registered child molester, including providing financial assistance to him before and since his incarceration, a relationship Mother plans to continue at such time as [D.Z.] may be released from prison.  Additionally, Mother is currently incapable of regulating her emotions and reactions when faced with a situation she does not like.  Mother's testimony evidences she either has no concern or perhaps no comprehension that her reactions are excessive and inappropriate.  Her combative, volatile outbursts when she is unhappy or angry or frustrated place the Children at risk of potential physical harm, which in fact has already happened with [A.S.].  Mother is currently unable to modify her reactions, and has only recently begun to explore in therapy managing frustration and appropriate responses.

(App. at 91-2.)  Mother's argument is a request for us to reweigh the evidence, which we cannot do.  *See Parmeter*, 878 N.E.2d at 450 (appellate court does not reweigh evidence).  The facts, as set forth above herein, support the court's findings and those findings support the court's conclusion Children are CHINS.

## Conclusion

[13]    DCS presented sufficient evidence Children were CHINS.  Accordingly, we affirm.

Affirmed.

Crone, J., and Bradford, J., concur.