ATTORNEY FOR APPELLANT
Steven J. Halbert
Carmel, Indiana

ATTORNEY FOR APPELLEE
Robert J. Henke
Indianapolis, Indiana

Deborah S. Burke
Marion, Indiana



## In the
## Indiana Supreme Court

No. 49S02-0906-JV-270

IN THE MATTER OF N.E., A CHILD IN NEED OF
SERVICES,
N.L. (FATHER),

                                        *Appellant (Respondent below)*,

                            v.

INDIANA DEPARTMENT OF CHILD SERVICES,

                                        *Appellee (Petitioner below)*.

Appeal from the Marion Superior Court, Juvenile Division, No. 49D09-0712-JC-53883-886
The Honorable Geoffrey Gaither, Magistrate
The Honorable Marilyn A. Moores, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0806-JV-522

**January 6, 2010**

**Sullivan, Justice.**

The trial court adjudicated a child to be a "Child in Need of Services" ("CHINS") without specifically alleging that the child was a CHINS with respect to the child's father. The father contends that the CHINS adjudication does not apply to him. The question in a CHINS adjudication is not parental fault, but whether the child needs services. Because a CHINS determina-

tion regards the status of the child, the juvenile court is not required to determine whether a child is a CHINS as to each parent, only whether the statutory elements have been established.

## Background

N.E. was born on January 24, 2004, the daughter of a mother ("Mother") of three other children, each of the four having a separate father. In December, 2007, the Department of Child Services ("State") filed a petition in the Juvenile Division of the Marion Superior Court alleging that all four of Mother's children were CHINS. The State typically files such a petition when it believes a child has been the victim of abuse, neglect, or abandonment.

The court filing recited that Mother was unable to protect her children from domestic violence. Because the State believed that none of the fathers had established paternity (and had not come forward to demonstrate the ability to parent their children appropriately), it removed the children from Mother's home. N.E. was not at Mother's home when the State removed the children. The State located N.E. at the home of her paternal grandmother ("Grandmother") and placed her into foster care with her siblings.

The juvenile court subsequently held a hearing at which the State conceded that N.E. spent a great deal of time at the home of Grandmother, where N.L. ("Father") also lived. The court ordered Mother and Father to undergo DNA testing to determine the paternity of N.E. The court established Father's paternity and placed N.E. in the custody of Father and Grandmother. About a week later, however, the State filed a motion to remove N.E. from Father and Grandmother, setting forth several reasons: (1) Father had a prior conviction for domestic battery; (2) N.E.'s paternal grandfather lived in the house; (3) N.E.'s paternal grandfather was addicted to cocaine; and (4) the paternal grandfather had an outstanding warrant for his arrest due to a probation violation. On February 1, 2008, the court returned N.E. to foster care with her siblings.

On February 12, 2008, Mother admitted that her children were CHINS; Father did not. He requested a fact finding hearing. During the fact finding hearing the parties presented conflicting evidence as to where N.E. spent most of her time. Father testified that N.E. lived three

years and eight months out of her first four years with Father and Grandmother. Grandmother testified that she and Father took care of N.E. 95% of the time. Mother testified that N.E. lived with her most of the time.

The Guardian ad Litem stated that:

> There are varying [accounts] as to how much time [N.E.] has lived with her father in the home of the [paternal[1]] grandmother; however, there is no doubt that it was extensive and went back to an early age for [N.E.]. There is also no doubt that [N.E.] was appropriately cared for while in the home, whether there a majority of the time or for only three to four days a week.

(Appellant's App. 154.)

At the close of evidence, the court found that N.E. was a CHINS; N.E. remained in foster care. On May 30, 2008, the court held a dispositional hearing and found the children to be wards of the State. The trial court made no specific findings as to Father or its reasons for not placing N.E. with Father.

Father appealed. A divided Court of Appeals reversed, concluding that the State had not alleged, and the juvenile court had not determined, N.E. to be a CHINS with respect to Father. In re N.E., 903 N.E.2d 80, 89 (Ind. Ct. App. 2008). Judge Vaidik dissented. She was of the view that "a CHINS determination regards the status of the child," and that once properly determined, it was applicable to both parents. Id. at 89-90. However, both the majority of the Court of Appeals and Judge Vaidik concluded that the juvenile court's dispositional decree was deficient in not articulating reasons for not placing N.E. with Father.

The State sought, and we granted, transfer. Ind. Appellate Rule 58(A).[2]

---

[1] The Guardian ad Litem said "maternal" grandmother but the context clearly shows that he meant "paternal" grandmother.

[2] In addition to Father's contentions concerning N.E.'s adjudication as a CHINS and the content of the dispositional order, Father also argued that the court held the fact finding hearing outside the time permitted by statute. We summarily affirm the decision of the Court of Appeals regarding the timeliness of the hearing. App. R. 58(A)(2).

## Discussion

## I

Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. Ind. Code § 31-34-12-3. Indiana Code sections 31-34-1-1 through 11 specify the elements of the CHINS definition that the State must prove:

> (1) the child is under the age of 18;
>
> (2) one or more particular set or sets of circumstances set forth in the statute exists; and
>
> (3) the care, treatment, or rehabilitation needed to address those circumstances is unlikely to be provided or accepted without the coercive intervention of the court.

For example, to establish that a child is a CHINS under Indiana Code section 31-34-1-1, the State must prove the following set of circumstances: "the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision . . . ." Similarly, under Indiana Code section 31-34-1-2, the State must prove that "the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian . . . ."

A CHINS adjudication focuses on the condition of the child. As the examples in the preceding paragraph illustrate, the acts or omissions of one parent can cause a condition that creates the need for court intervention. A CHINS adjudication can also come about through no wrongdoing on the part of either parent, e.g., where a child substantially endangers the child's own health or the health of another individual, I.C. § 31-34-1-6; or when a child is adjudicated a CHINS because the parents lack the financial ability to meet the child's extraordinary medical needs. See Lake County Div. of Family & Children Servs. v. Charlton, 631 N.E.2d 526 (Ind. Ct.

4

App. 1994) (declaring a 14-year-old boy born with respiratory and heart defects a CHINS because his medical insurance lapsed when claims exceeded coverage limits).

While we acknowledge a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that – a determination that a child is in need of services. Standing alone, a CHINS adjudication does not establish culpability on the part of a particular parent. Only when the State moves to terminate a particular parent's rights does an allegation of fault attach. We have previously made it clear that CHINS proceedings are "distinct from" involuntary termination proceedings. State ex rel. Gosnell v. Cass Circuit Court, 577 N.E.2d 957, 958 (Ind. 1991). The termination of the parent-child relationship is not merely a continuing stage of the CHINS proceeding. Id. In fact, a CHINS intervention in no way challenges the general competency of a parent to continue a relationship with the child. Id.

In this case, the Court of Appeals majority opinion said that, "[n]ormally, a juvenile court would determine that a child is either a CHINS or is not a CHINS when presented with a CHINS petition." In re N.E., 903 N.E.2d at 87. As such, the Court of Appeals said that the CHINS statutory scheme does not require the juvenile court to determine whether a child is a CHINS as to each parent. But the Court of Appeals went on to hold that "certain principles and considerations may make such a split analysis appropriate in some instances." Id. (citing In re C.S., 863 N.E.2d 413, 418 (Ind. Ct. App. 2007) (determining that where the child had been found a CHINS with respect to his mother, the child was not a CHINS with respect to his father because there was neither an allegation nor evidence that the father was responsible for the circumstance which led to the CHINS determination), trans. denied).

We disagree with our colleagues and hold that a CHINS determination establishes the status of a child alone. Because a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage. As Judge Vaidik points out in her dissent, the conduct of one parent can be enough for a child to be adjudicated a CHINS. Id. at 89-90. Indeed, to adjudicate culpability on the part of each individual parent in a CHINS proceeding would be at variance with the purpose of the CHINS inquiry: determining whether a child's circumstances necessitate services that are unlikely to be provided

5

without the coercive intervention of the court. <u>See</u> I.C. §§ 31-34-1-1 & -2. Said differently, the purpose of a CHINS adjudication is to protect children, not punish parents. <u>In re A.I.</u>, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), <u>trans. denied</u>. The resolution of a juvenile proceeding focuses on the best interests of the child, rather than guilt or innocence as in a criminal proceeding. <u>Baker v. Marion County Office of Family & Children</u>, 810 N.E.2d 1035, 1039 (Ind. 2004).

In this case, the domestic violence in Mother's home served as the basis of the CHINS petition. Specifically, the State alleged that Mother failed to protect N.E. and her siblings from ongoing domestic violence between herself and the alleged father of her youngest child and that there had been several incidents of domestic violence against Mother in the presence of her children. In these circumstances, it was not necessary for the CHINS petition to make any allegations with respect to Father. We conclude that the trial court property adjudicated N.E. a CHINS.

## II

Once CHINS status has been determined, the juvenile court holds a hearing to consider alternatives for the child's care, treatment, placement, or rehabilitation; the participation of the parent, guardian or custodian; and the financial responsibility for the services provided. I.C. § 31-34-19-1. The juvenile court then fashions a dispositional decree setting forth the care, treatment, or rehabilitation necessary to address the child's needs. In this regard, Indiana Code section 31-34-19-10 provides:

> (a) The juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning the following:
> (1) The needs of the child for care, treatment, rehabilitation, or placement.
> (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.
> (3) Efforts made, if the child is a child in need of services, to:
> (A) prevent the child's removal from; or
> (B) reunite the child with;
> the child's parent, guardian, or custodian in accordance with federal law.

(4) Family services that were offered and provided to:
    (A) a child in need of services; or
    (B) the child's parent, guardian, or custodian;
in accordance with federal law.
(5) The court's reasons for the disposition.
(b) The juvenile court may incorporate a finding or conclusion from a pre-dispositional report as a written finding or conclusion upon the record in the court's dispositional decree.

In this case, the court was presented with a pre-dispositional report that stated in part:

[The State] determined that these children [are] children in need of services because their mother and sole legal custodian [] has failed to protect her children from ongoing domestic violence between herself and the alleged father of [her youngest child]. There have been several incidents of violence cases pending against [the father of her youngest child] as a result. [Mother] has continuously failed to cooperate in the prosecution of those domestic violence cases and has exhibited a lack of cooperation with [the State] to ensure the safety of her children. Based upon [Mother's] failure to protect her children and her lack of cooperation, the children are in serious danger in the care of their mother.

(Appellant's App. 122.)

As described under Background, supra, the State had been unaware that N.E. spent a substantial portion of her time with Father. The allegations in the CHINS petition neither pertained to Father nor contended that he knew of the acts or omissions by Mother that resulted in the CHINS proceeding. The State presented no evidence at the hearing that N.E. was in danger in Father's care.[3] The Guardian ad Litem stated that "[t]here is . . . no doubt that [N.E.] was appropriately cared for while in [Grandmother's] home . . . ." (Appellant's App. 154.)

The court's dispositional orders read, in relevant part, with regard to Mother, all four of the children, and all four of the fathers:

The Court finds that reasonable efforts have been offered and available to prevent or eliminate the need for removal from the home. After reviewing the reports and information from the Office of Family and Children, service providers

---

[3] Even though the State had originally expressed concerns about conditions present in Father's home, the juvenile court's findings did not address these concerns.

and other sources, which the Court now incorporates into this order (see Court file), the Court also finds that the services offered and available have either not been effective or been completed that would allow the return home of the children without Court intervention.

The Court finds that it is contrary to the health and welfare of the children to be returned home and that reasonable efforts have been made to finalize a permanency plan for the children[.]

(Appellant's App. 63.)

We find, as did the Court of Appeals (the majority and Judge Vaidik), these findings deficient with respect to N.E. and to Father. As set forth above, Indiana Code section 31-34-19-10(a)(5) requires the trial court to accompany the court's dispositional decree with written findings and conclusions concerning "[t]he court's reasons for the disposition." The juvenile court concluded that N.E. was a ward of the State based on Mother's failure to protect her children and cooperate with the State. Considering that the dispositional decree in this case covered four fathers and multiple children, the court's reasons for its disposition regarding N.E. do not seem to have taken into account the time she spent in Father's (and Grandmother's) care – or anything else regarding the suitability of placing N.E. with Father.

We find such omission of consequence for two related reasons.

First, when a juvenile court makes decisions during a CHINS hearing as to whether the child will become a ward of the State or orders services, this has the potential to interfere with the rights of parents in the upbringing of their children. Therefore:

procedural irregularities, like an absence of clear findings of fact, in a CHINS proceeding may be of such import that they deprive a parent of procedural due process with respect to a potential subsequent termination of parental rights. Our legislature's enactment of an interlocking statutory scheme governing CHINS and involuntary termination of parental rights compels this court to make sure that each procedure is conducted in accordance with the law. Both statutes aim to protect the rights of parents in the upbringing of their children, as well as give effect to the State's legitimate interest in protecting children from harm. We conclude that in order to properly balance these two interests, the trial court needs to care-

8

fully follow the language and logic laid out by our legislature in these separate statutes.

In re J.Q., 836 N.E.2d 961, 967 (Ind. Ct. App. 2005) (citations omitted).

Second, Indiana Code section 31-34-19-6(1)(A) requires the juvenile court to enter a dispositional decree that is "the least restrictive (most family like) . . . ." If an out-of-home placement is required, the court shall consider whether the child should be placed with a blood relative before considering other out-of-home placements. See I.C. § 31-34-19-7. "[U]nder the policy pronouncements inherent in the entire scheme of CHINS procedures, a primary purpose and function of the [State] is to encourage and support the integrity and stability of an existing family environment and relationship." Jackson v. Madison County Dep't of Family & Children, 690 N.E.2d 792, 793 (Ind. Ct. App. 1998), trans. denied.

Because the court's dispositional decree did not address its reasons for not placing N.E. with Father, we believe it may well have interfered with Father's rights in the upbringing of N.E. and violated the "least restrictive (most family like)" placement mandate of Indiana Code section 31-34-19-6(1)(A).

## Conclusion

We vacate that part of the juvenile court's judgment pertaining to N.E. and remand for proceedings consistent with this opinion.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.