## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 03 2016, 7:48 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR MOTHER

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEY FOR FATHER

Amy Karozos
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

Ja.N., M.N. & Jy.N (minor children),

*Children in Need of Services,*

and

J.C. (mother) & J.N. (father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 3, 2016

Court of Appeals Case No.
49A05-1506-JC-490

Appeal from the Marion County Superior Court

The Honorable Marilyn A. Moores, Judge
The Honorable Jennifer Hubartt, Magistrate;

Trial Court Cause No.
49D09-1501-JC-86
49D09-1501-JC-87
49D09-1501-JC-88

**May, Judge.**

J.C. (Mother) and J.N. (Father) (collectively, Parents) appeal the adjudication of their children, Ja.N., M.N., and Jy.N. (collectively, Children), as Children in Need of Services (CHINS). Parents argue the trial court abused its discretion when it denied Parents' request for continuance at the fact-finding hearing and the Department of Child Services (DCS) did not present sufficient evidence Children were CHINS. Mother argues the trial court abused its discretion when it required her to complete certain services. We affirm.

## Facts and Procedural History

Parents' children, Ja.N., M.N., and Jy.N., were born October 16, 2012; September 29, 2013; and January 6, 2015; respectively. Shortly after Jy.N.'s birth, DCS received an allegation Jy.N. tested positive for methamphetamine at birth and Mother had not participated in prenatal care. When DCS investigated, Mother denied using drugs during her pregnancy and Father admitted to using marijuana once a week. When she visited the family's home DCS Family Case Manager (FCM) Kayla Day observed the house did not have gas utilities, the house was heated using space heaters and an open oven, Parents had placed a baby gate in the kitchen to prevent Ja.N. and M.N. from coming in contact with the open oven, and there was "a spoon with a burnt-like substance and a broken lighter sitting on the table." (Tr. at 60.)

On January 12, 2015, DCS alleged Children were CHINS and the trial court held an initial hearing and a detention hearing. The trial court placed Children

in foster care and allowed Mother to continue breastfeeding Jy.N. The trial court also appointed defense counsel and a Guardian ad Litem (GAL).

[4] On January 26, 2015, the trial court held a pre-trial hearing and placed Children with their maternal great-grandmother, allowed Mother to live with Children and maternal great-grandmother, and ordered Father to have visitation. The visitation would be supervised by maternal great-grandparents because Father tested positive for marijuana. FCM Dajour Crawford recommended Parents participate in home-based counseling, random drug screens, and substance abuse assessments. The trial court did not order these services, as Parents were voluntarily participating in these services.

[5] The trial court held another pre-trial hearing on February 9, 2015, at which the parties waived the sixty-day trial deadline. The trial court noted Parents' clean drug screens and voluntary participation in services. It ordered Children to remain in relative care but authorized increased visitation including temporary in-home visitation on the positive recommendations from the FCM, GAL, and service providers. It scheduled mediation for April 14, 2015, and a fact-finding hearing for April 27, 2015.

[6] On April 14, 2015, Children were placed with Parents because the family home was appropriate, the electricity was on at the family home, Parents interacted with Children well, and "Parents had cooperated in the services to the extent that [DCS] had no safety concerns." (*Id.* at 78.) However, for thirteen days after the return of Children to Parents' care, the FCM was unable to contact

Parents via telephone or at the family home, and the FCM believed the electricity had been shut off at the family home based on her observations when she stopped by the house twice during that time.

[7] On April 27, 2015, the trial court held a fact-finding hearing. Parents did not appear, but their counsel were present. Parents' attorneys requested a continuance because Parents were not present at the hearing, but the trial court denied their requests. After DCS presented its evidence, Parents' attorneys requested judgments on the evidence, both of which requests were denied. The trial court adjudicated Children as CHINS.

[8] On May 11, 2015, the trial court held a dispositional hearing that Parents attended. Parents indicated they did not attend the fact-finding hearing because they received a card with the incorrect time for the hearing, and they asked the trial court to vacate the adjudications. The trial court denied Parents' request. Parents indicated the family was residing with paternal grandmother. FCM Crawford testified she had visited parental grandmother's home and it was appropriate. The trial court ordered the continued placement of Children in Parents' care.

[9] DCS recommended Parents continue home-based counseling, submit to random drug screens, and attend to Children's medical needs. DCS also recommended Father complete substance abuse treatment and Mother complete substance abuse education. Mother objected to her participation in random drug screens because she did not test positive for drugs at any time in

the proceedings. Parents both objected to the order requiring them to attend to Children's medical needs, as there had been no evidence to suggest doing so was an issue. The trial court ordered Parents to participate in a home-based case management program, submit to random drug screens, meet all medical and mental needs of Children, and to adhere to the Safety Plan. Father was ordered to complete a substance abuse assessment and follow all recommendations, and Mother was ordered to participate in substance abuse education.

# Discussion and Decision

### *Motion to Continue*

[10] We defer to the sound discretion of the trial court regarding the decision to grant or deny a continuance. *Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*. We will reverse the trial court's decision only on an abuse of that discretion. *Id*. An abuse of discretion "may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion." *Id*. Under Trial Rule 53.5, a trial court shall grant a continuance upon motion and "a showing of good cause established by affidavit or other evidence."

[11] Parents argue they were denied their due process rights because the trial court would not continue the April 27 fact-finding hearing. Due process is essentially "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). We recognize that,

"although due process is not dependent on the underlying facts of the particular case, it is nevertheless 'flexible and calls for such procedural protections as the particular situation demands.'" *Lawson v. Marion Cnty. Office of Family & Children*, 835 N.E.2d 577, 580 (Ind. Ct. App. 2005) (quoting *In re B.T.*, 791 N.E.2d 792, 795 (Ind. Ct. App. 2003), *trans. denied*).

[12] Parents were present at all pre-trial hearings. At the February 9, 2015, pre-trial hearing, the trial court set a mediation date of April 14, 2015, and a fact-finding hearing for April 27, 2015, at 10:30 a.m. It announced those dates orally and also included in its order the dates and times of the mediation session and fact-finding hearing. Parents were present at the April 14 mediation session and were granted temporary custody of Children at that time.

[13] For thirteen days prior to the fact-finding hearing, DCS was unable to communicate with Parents. Parents did not attend the fact-finding hearing and not provide a reason via affidavit or evidence under TR 53.5 why the fact-finding hearing should be continued. However, Parents' respective counsels were present at the fact-finding hearing. They cross-examined witnesses and presented arguments. When Parents appeared at the May 11, 2015, dispositional hearing, they did not indicate they would have presented additional evidence had they attended the fact-finding hearing, nor did they provide evidence they arrived at the hearing at the time they claim their notice indicated.

Therefore, as Parents have not demonstrated prejudice based on the trial court's denial of their motions for continuance, we cannot say the trial court abused its discretion. Parents did not provide the trial court with a reason for their absence via affidavit or evidence as required by TR 53.5. Parents were each represented by counsel at the fact-finding hearing and their counsels were able to cross-examine witnesses, present evidence, and present argument. We therefore cannot say their due process rights were violated. *See In re E.E.*, 853 N.E.2d 1037, 1044 (Ind. Ct. App. 2006) (parental due process rights not violated when parent is represented throughout the proceedings by counsel, and counsel attends hearing and has opportunity to cross-examine witnesses and offer argument), *trans. denied*.

### *Sufficiency of the Evidence*

A CHINS proceeding is civil in nature, so DCS must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Ind. Code § 31-34-1-1 states:

> Sec. 1. A child is a child in need of services if before the child becomes eighteen (18) years of age:

> > (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

> > (2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

A CHINS adjudication "focuses on the condition of the child," and not the culpability of the parent. *In re N.E.*, 919 N.E.2d at 105. The purpose of finding a child to be a CHINS is to provide proper services for the benefit of the child, not to punish the parent. *Id.* at 106.

[16] When a juvenile court enters findings of fact and conclusions of law in a CHINS decision, we apply a two-tiered standard of review. *Parmeter v. Cass County DCS*, 878 N.E.2d 444, 450 (Ind. Ct. App. 2007), *reh'g denied*. We first consider whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We may not set aside the findings or judgment unless they are clearly erroneous. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* We give due regard to the juvenile court's ability to assess witness credibility and do not reweigh the evidence; we instead consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.* We defer substantially to findings of fact, but not

to conclusions of law. *Id.* Parents[1] challenge many of the trial court's findings, claiming they are not supported by the evidence.

### Finding Three

Mother contends DCS did not present evidence to support Finding 3, which states, "[Jy.N.] was born on 1/6/15 and is 3 months old." (Mother's App. at 83.) Mother argues DCS did not prove Jy.N. was under eighteen years of age as required by Ind. Code § 31-34-1-1. It did; during the fact-finding hearing, FCM Crawford testified Jy.N. was four months old.

### Finding Seven

Father challenges Finding 7, which states, "On or about 1/13/15 [FCM Day] was assigned a report regarding [Children]." (*Id.*) Father argues the date was before January 13, 2015, as Children were removed from Parents on January 8, 2015. However, the finding is not specific as to the exact date, as it includes the clause, "on or about[.]" (*Id.*) Further, the issue is of no consequence because it does not affect the ultimate outcome of the proceedings because DCS presented other evidence, such as Father's drug use and the lack of utilities in the family home, to support the CHINS adjudication. *See, e.g., In re B.J.*, 879 N.E.2d 7, 20

---

[1] Parents, in separate appellate briefs, challenge a number of the trial court's findings, many of which are the same. We address the challenged findings in the aggregate.

(Ind. Ct. App. 2008) (erroneous finding was not grounds for reversal because other evidence supported the trial court's decision), *trans. denied*.

*Finding Ten*

Mother challenges Finding 10, which states, "[FCM Day] observed safety concerns in the home on or about 1/13/15, including a burnt spoon and lighter on a table within reach of [Children], a lack of heat/utility disconnected, and the oven door open to provide heat to the home." (Mother's App. at 83.) FCM Day testified the gas at the family home had been disconnected and Parents were using space heaters and an open oven to heat the house. FCM Day also testified she observed "a spoon with a burnt-like substance and a broken lighter sitting on the table" within the reach of Children. (Tr. at 60.) We decline Mother's invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Parmeter*, 878 N.E.2d at 450 (appellate court does not reweigh evidence or judge the credibility of witnesses). Thus, we conclude DCS presented evidence to support Finding 10.

*Finding Eleven*

Parents challenge Finding 11, which states, "[FCM Day's] concerns for [Children] included lack of supervision, risk of injury, and parental substance abuse. [FCM Day] recommended a substance abuse evaluation and home based casemanagement [sic] services for [Parents] in January, 2015." (Mother's App. at 83.) Mother argues the "finding is not supported by the evidence as a whole" because "[FCM Day] offered no statements or facts to support her

general concerns regarding lack of supervision or risk of injury." (Br. of Mother at 18.)

FCM Day testified she had safety concerns regarding Children "due to the heat, the open oven." (Tr. at 61.) Mother's alternative version of the testimony and facts is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Parmeter*, 878 N.E.2d at 450 (appellate court does not reweigh evidence or judge the credibility of witnesses). Thus, we conclude DCS presented evidence to support Finding 11.

[20] Father argues Finding 11 is erroneous because FCM Day did not recommend a substance abuse evaluation and home based case management in January 2015. DCS concedes FCM Day did not "make a formal recommendation" for these services. (Br. of Appellee at 27.) But FCM Crawford did make those recommendations in January, 2015, so the error in the identification of the FCM is of no consequence because DCS presented other evidence, such as Father's drug use and a lack of utilities in the family home, to support the CHINS adjudication. *See In re B.J.*, 879 N.E.2d at 20 (erroneous finding was not grounds for reversal because there existed other sufficient evidence to support trial court's decision).

*Finding Regarding the Status of the Family Home Prior to the Fact-Finding Hearing*

[21] Mother challenges Findings 18, 20, and 25, which concern the status of the family home prior to the fact-finding hearing:

18. [FCM Crawford] observed the family home from the outside on 4/22/14 [sic]. [FCM Crawford] believed there were no lights on/lack of utilities in the home.

\* \* \* \* \*

20. [FCM Crawford] has safety concerns for [Children] at this time as currently [Parents] have failed to communicate with her since [Children] were returned to their care and she has not been able to see the family home. She has safety concerns regarding parental substance abuse and a lack of utilities in the home.

\* \* \* \* \*

25. [Homebased Services Provider Regina Johnson] has current safety concerns for [Children]. [Johnson] visited the family home on the morning of 4/27/14 [sic], however, no one was home. [Johnson] believed there was a lack of utility service to the home on this date.

(Mother's App. at 84.) Mother does not dispute the findings regarding their lack of communication with FCM Crawford for the thirteen days after the date Children were returned to Parents' care. Mother argues it was a "giant leap," (Br. of Mother at 19), for FCM Crawford to conclude there were not utilities in the family home on April 22 and April 27 because "[s]he did not enter the home, and she did not try to turn on any light switches." (*Id.*)

FCM Crawford testified she visited the family home on April 22 and "there was [sic] no lights on." (Tr. at 72.) She knew the house had electric heat and she was concerned the utilities had been disconnected, as that had been the case in

the past.  Johnson testified she visited the family home on April 27, and observed

> there [didn't] appear to be any electricity in their home. . . . it looked [like] someone [had] been there but it still don't [sic] look like any lights in the home and there's a note in the door, somebody left a note and the house seemed like nobody lives in the, nobody's been there for a while.

(*Id*. at 88.)  Mother's arguments to the contrary are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do.  *See Parmeter*, 878 N.E.2d at 450 (appellate court does not reweigh evidence or judge the credibility of witnesses).  Thus, we conclude DCS presented evidence to support findings 18, 20, and 25.

*Finding Twenty-Two*

[23]  Parents challenge Finding 22, which states, "[Johnson] provided casemanagement [sic] services to [Parents] from February, 2015 through April, 2015.  [Johnson] worked more extensively with [Mother] than with [Father] due to [Father] "no-showing" for several casemanagement [sic] appointments." (Mother's App. at 84.)  Mother argues the finding ignores her voluntary participation in services prior to February 2015.  Father argues while he did miss a few appointments, Johnson worked with Mother more because Mother was living with Children during the time of the services.

[24]  The evidence indicates the trial court ordered referrals to services for Parents at the February 9, 2015, pre-trial hearing.  Johnson testified:

> Sometimes [Father] was a no show. When we went to his house it was a couple times he had been no show. In the last, in April he was a no show. February I didn't meet with him but, but [sic] at the team meeting and then he started engaging with me in March.

(Tr. at 84.) Johnson testified she met with Father "[a]t least three times in March." (*Id*.) Parents' arguments to the contrary are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Parmeter*, 878 N.E.2d at 450 (appellate court does not reweigh evidence or judge the credibility of witnesses). Thus, we conclude DCS presented evidence to support Finding 22.

### *Finding Twenty-Six*

[25] Mother argues Finding 26 is not supported by the evidence. It states, "[Johnson] offered community based services and information to [Parents], however, they declined to accept those services." (Mother's App. at 84-5.) Johnson testified:

> [Counsel]: You indicated that the family's continuing needs include addressing finding community resources, correct?
>
> [Johnson]: Yes.
>
> [Counsel]: When you were working with the family, when you've been working with the family, did you talk to them about community resources that are available to them?
>
> [Johnson]: Yes I did.

> [Counsel]:  So they do have knowledge of what is available to them at this point, correct?
>
> [Johnson]:  They declined it.
>
> [Counsel]:  Okay.  But in the future they would have the knowledge that you've provided to them about where to go?
>
> [Johnson]:  Yes.

(Tr. at 84-5.)  Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do.  *See Parmeter*, 878 N.E.2d at 450 (appellate court does not reweigh evidence or judge the credibility of witnesses).  Thus, we conclude DCS presented evidence to support Finding 26.

*Additional Sufficiency Challenges*

[26] Many of Parents' arguments focus on a specific finding in isolation, and cite case law indicating a child cannot be declared a CHINS based solely on that finding.  The challenged findings are supported by the evidence, and those findings as a whole concerning the family's living conditions, substance abuse, and lack of communication support the conclusion Children are CHINS.  Further, our Indiana Supreme Court recently held the absence of any vital finding is not in error, "because no statute requires special findings in a CHINS fact-finding order, nor did any party move for such findings under Indiana Trial Rule 52(A)."  *In re S.D.*, 2 N.E.3d 1283, 1288 (Ind. 2014), *reh'g denied*.

[27] Father argues the trial court should have granted Parents' motions for judgment on the evidence because DCS did not prove Children were CHINS. As we conclude the opposite, we need not entertain this argument.

### *Requirements of Parental Participation Decree*

[28] Ind. Code § 31-35-20-3 provides:

> If the juvenile court determines that a parent, guardian, or custodian should participate in a program of care, treatment, or rehabilitation for the child, the court may order the parent, guardian, or custodian to do the following:
>
> (1) Obtain assistance in fulfilling the obligations as a parent, guardian, or custodian.
>
> (2) Provide specified care, treatment, or supervision for the child.
>
> (3) Work with a person providing care, treatment, or rehabilitation for the child.
>
> (4) Participate in a program operated by or through the department of correction.

The trial court "has broad discretion in determining what programs and services in which a parent is required to participate," but "the requirements must relate to some behavior or circumstance that was revealed by the evidence." *In re A.C.*, 905 N.E.2d 456, 464 (Ind. Ct. App. 2009).

The trial court did not abuse its discretion when it ordered Mother to participate in substance abuse education, undergo random drug screens, and meet the

medical needs of Children as part of the parental participation plan. DCS presented evidence Jy.N. tested positive for methamphetamine at birth. Father, with whom Mother and Children lived, admitted to using marijuana and tested positive for marijuana multiple times in January 2015. The GAL testified, regarding Children's medical appointments:

> I visited with [Children] at that point in time with maternal grandmother. Mother was in the home. We discussed some of the, the [sic] medical needs of [Children] at that point in time regarding medical appointments and medical concerns. At that point [Ja.N.] was in need of a medical appointment. He has a his eye [sic] is crossing and it's a severe, the severity level of it [is] to the point that the doctor definitely told [Mother] that she needed to get in to see a specialist ASAP. And then at that point [Jy.N.] had an appointment, follow up appointment regarding I believe there was some, some medical needs that I actually can't recall at this point. However, since that point in time, [Jy.N.] went in for his medical appointment; however, [Mother] has not, [Mother] did not ensure that the medical appointment took place for [Ja.N.]. There was also a First Steps appointment that was, that was not followed up with for [Children] at that point in time.

(Tr. at 91-2.) Based on that evidence, we conclude the trial court's orders were related to some behavior or circumstance presented to the court. Mother's arguments to the contrary are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Parmeter*, 878 N.E.2d at 450 (appellate court does not reweigh evidence or judge the credibility of witnesses).

# Conclusion

[29] Parents' due process rights were not violated when the trial court denied their motions to continue because their counsel were present at the April 27, 2015, fact-finding hearing to offer argument and cross-examine witnesses. DCS provided sufficient evidence to support the trial court's findings and those findings supported the trial court's conclusion Children were CHINS. Finally, the trial court did not abuse its discretion when it ordered Mother to complete substance abuse education, to undergo random drug screens, and to attend to Children's medical needs. Accordingly, we affirm the adjudication of Children as CHINS.

[30] Affirmed.

Najam, J., and Riley, J., concur.