

**FILED**

Mar 21 2017, 6:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT M.O.
(CHILD)

Ruth Johnson
Valerie K. Boots
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Jill M. Acklin
McNeely Stephenson
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE N.M.
(MOTHER)

Megan Shipley
Marion County Public Defender
Agency
Appellate Division
Indianapolis, Indiana

ATTORNEY FOR APPELLEE MI.O.
(FATHER)

Darren Bedwell
Marion County Public Defender
Agency
Appellate Division
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of M.O., A Child in Need of Services,

M.O., Child,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner,*

N.M., Mother, and Mi.O., Father,

*Appellees-Respondents,*

and

Child Advocates, Inc.,

*Appellee-Guardian ad Litem.*

March 21, 2017

Court of Appeals Case No. 49A05-1607-JC-1668

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge
The Honorable Geoffrey Gaither, Magistrate

Trial Court Cause No. 49D09-1505-JC-1729

**Kirsch, Judge.**

[1]     M.O. ("Child") appeals the juvenile court's adjudication, finding her to be a Child in Need of Services ("CHINS"). We consolidate and restate the issues raised by the parties as:

> I.     Whether the juvenile court erred in adjudicating Child as a CHINS on grounds different than those set forth in the CHINS petition; and

> II. Whether there was sufficient evidence presented to support the CHINS adjudication.

We affirm.

## Facts and Procedural History

Child was born on November 11, 1998 to N.M. ("Mother") and Mi.O. ("Father") (together, "Parents"). Child was sixteen at the time that the present CHINS case was filed. Child gave birth to her first son, J., when she was fourteen years old, and J. was two years old when the present case was filed. The Indiana Department of Child Services ("DCS") had an open CHINS case for J., and he had been placed with Father. Child gave birth to her second son, A., on March 31, 2015. When the present case was filed, Child and A. were living at the St. Joseph Carmelite Home in East Chicago ("Carmelite Home"). Child's placement in the Carmelite Home was arranged by the Marion County Probation Department due to the fact that Child was on probation for a juvenile delinquency case.

On May 3, 2015, DCS received a report that the probation department was planning to close Child's case and that Child's placement in the Carmelite Home would end when the case was closed. At that time, DCS family case manager Shannon Pickering ("FCM Pickering") began an assessment of Child, but was unable to speak with Child because Child refused to speak with anyone from DCS on the phone. FCM Pickering spoke with both Mother and Father to determine if Child could live with either of them. Father told FCM

Pickering that he was not willing to have Child placed in his home because he was concerned that Child was still exhibiting aggressive behaviors toward adults and authority figures and worried that she would continue those behaviors if she was placed in his home. Mother refused to take a drug screen, which was a prerequisite to having Child placed in her home, and FCM Pickering, therefore, did not feel comfortable placing Child in Mother's home. Based on this information, FCM Pickering and her supervisors believed that coercive intervention was necessary to provide Child with housing and mental health treatment. On May 27, 2015, DCS filed a petition alleging that Child was a CHINS pursuant to Indiana Code section 31-34-1-1 ("CHINS 1"), which involves parental inaction or neglect. On June 25, 2015, Parents filed a notice of intent that they wished to assert that Child was a CHINS pursuant to Indiana Code section 31-34-1-6 ("CHINS 6"), which involves the child's own behaviors endangering herself or others.

[5] Child left the Carmelite House at the end of June 2015 and was placed in relative care with her cousin on July 21, 2015. About a week after being placed with her cousin, Child ran away after a confrontation with her cousin. On July 30, 2015, a pretrial conference was held, at which FCM Brittny Smith ("FCM Smith") recommended emergency shelter care for Child because, at that time, "no relative [was] able to handle [Child's] behaviors." *Tr.* at 11. Mother testified at the hearing that Child could not live with her because Mother did not want to jeopardize her Section 8 housing, which she needed for herself and the three other children living with her. *Id.* at 23.

[6] Child failed to appear for the pretrial conference and, instead, participated telephonically. Child informed the court that she was at a friend's apartment and gave the address; while Child was still on the phone during the hearing, FCM Smith went to the address to attempt to get Child and bring her to the hearing. Child was not at the address she provided, but FCM Smith saw Child open and close the door of another apartment. Although the juvenile court ordered Child to go outside, she refused and told the court she had left out the back door. Child also told the juvenile court that she had lied about being at that apartment complex and that she was actually on the south side of Indianapolis. FCM Smith was unable to locate Child at that time. While speaking with the juvenile court, Child stated that she would not go to any of the placements ordered by DCS and the court because she did not want to go there. *Id*. at 37. The juvenile court ordered Child to report to the juvenile court by 5:30 p.m. that evening, and Child responded, "I'll be there when I feel like it." *Id*. at 51-52. On August 6, 2015, the juvenile court issued an order for Child to appear at a show cause hearing; although Child was told about the hearing by her attorney and FCM Smith, Child did not appear.

[7] A fact-finding hearing was held on November 6, 2015, at which Child did not appear. At the time of the hearing, DCS had not had any contact with Child since the first week in August, and she was described as being "on the run" since July. *Id*. at 112. During the hearing, FCM Smith testified that Father would only consider allowing Child to live with him if she successfully received mental health treatment because he was concerned for the safety of the other

children in his home. *Id.* at 115. FCM Smith did not recommend placing Child with Mother because Mother had "numerous reports called in on her current home," Mother was allegedly in a relationship that involved domestic violence, and Child did not want to be placed with Mother. *Id.* at 114, 124. The juvenile court asked FCM Smith if she believed that Child was a CHINS pursuant to CHINS 1 or CHINS 6. *Id.* at 133-34. FCM Smith initially responded that DCS believed that Child was a CHINS pursuant to CHINS 1, but after more questioning, she stated that, based on her experience, she believed Child to be a CHINS pursuant to CHINS 6. *Id.* at 134-35.

[8] After DCS finished presenting its evidence, Parents moved for judgment on the evidence as to DCS's claim pursuant to CHINS 1. The juvenile court found that DCS had failed to meet its burden on the claim of CHINS 1 and then allowed Parents to present evidence that Child was a CHINS pursuant to CHINS 6. Mother offered into evidence the transcript of the pretrial hearing, in which Child failed to appear and avoided meeting with DCS, and emails between FCM Smith and someone from Carmelite Home discussing Child's behavior while staying there. Father testified that Child was a threat to herself and others and in need of mental health treatment and that she had attempted suicide a couple of years prior to the hearing. *Id.* at 157-58.

[9] The juvenile court then took judicial notice of its own records that showed that Child had sixteen referrals to the juvenile court, was a respondent in a termination of parental rights case as to J., had been the subject of a previous CHINS case, had five prior charges for being a runaway, had previously failed

referrals for services, and had true findings for theft, resisting law enforcement, and modification of her probation. *Id*. at 158-59. The juvenile court found Child to be a CHINS pursuant to CHINS 6. Child now appeals.

# Discussion and Decision

## I. Grounds for CHINS Petition

[10] Both Child and DCS argue that the juvenile court erred in adjudicating Child a CHINS on grounds different from those set forth in the CHINS petition filed by DCS. Specifically, Child and DCS contend that it was error for the juvenile court to adjudicate Child as a CHINS pursuant to CHINS 6, which requires proof that the child substantially endangers his or her own health or the health of another, even though the CHINS petition filed by DCS alleged that Child was a CHINS pursuant to CHINS 1, which requires proof that the child's mental or physical condition is seriously endangered by the actions or inactions of the parents.

[11] In the case of *In re V.C.*, 867 N.E.2d 167 (Ind. Ct. App. 2007), this court was presented with the issue of whether the trial court erred in adjudicating the child a CHINS as to the mother on grounds different from those set forth in the CHINS petition, and it turned to Indiana Trial Rule 15(B) to resolve the issue. *Id.* at 177. Pursuant to Indiana Trial Rule 15(B), issues not set out in the pleadings may be tried by the express or implied consent of the parties. *Id.* at 178. "The function of the issues, whether formed by the pleadings, pre-trial orders, or contentions of the parties, is to provide a guide for the parties and the

court as they proceed through trial." *Id.* Although either party may demand strict adherence to the issues raised before trial, if the trial court allows introduction of an issue not raised before trial, an objecting party may seek a reasonable continuance in order to prepare to litigate the new issue. *Id.* However, where the trial concludes without objection to the new issue, the evidence actually presented at trial controls. *Id.* Therefore, "neither pleadings, pre-trial orders, nor theories proposed by the parties should frustrate the trier of fact from finding the facts that a preponderance of the evidence permits." *Id.*

[12] As fairness dictates certain restraints, there are limits to the amendment of pleadings through implied consent. *Id.* Parties should be given some form of notice that an issue not pleaded is now before the court. *Id.* This notice can be overt and be expressly raised prior to, or sometime during, the trial, or it can be implied "as where the evidence presented at trial is such that a reasonably competent attorney would have recognized that the unpleaded issue was being litigated." *Id.*

[13] In the present case, we also turn to Trial Rule 15(B) to resolve the issue of whether the juvenile court erred in adjudicating Child a CHINS on grounds different from those set forth in the CHINS petition filed by DCS. Consent will be found if DCS and Child had overt or implied notice that evidence was being presented that Child was a CHINS pursuant to CHINS 6. On May 27, 2015, DCS filed a petition alleging that Child was a CHINS pursuant to CHINS 1, which involves parental inaction or neglect. On June 25, 2015, Parents filed a notice of intent that they wished to assert that Child was a CHINS pursuant to

CHINS 6, which involves the child's own behaviors endangering herself or others. Neither DCS nor Child objected to the notice of intent of Parents to pursue a CHINS 6 adjudication. This filing by Parents put DCS and Child on notice that Parents intended to present evidence that Child was a CHINS due to Child substantially endangering her own health or the health of another and that such would be an issue at trial.

[14] Additionally, at trial, after DCS presented its case, Parents moved for judgment on the evidence as to DCS's claim under CHINS 1. The juvenile court found that DCS had failed to meet its burden on the claim of CHINS 1 and allowed Parents to present evidence that Child was a CHINS pursuant to CHINS 6. This evidence included the transcript of the pretrial hearing, in which Child failed to appear and avoided meeting with DCS, emails between FCM Smith and someone from Carmelite Home discussing Child's behavior while staying there, and testimony that Child was a threat to herself and others and in need of mental health treatment and that she had attempted suicide a couple of years prior to the hearing.

[15] The purpose behind Trial Rule 15(B) is to provide the parties with some flexibility in litigating a case, and to promote justice by permitting evidence brought in at trial to determine the liability of the parties. *In re V.C.*, 867 N.E.2d at 169. The evidence presented in the present case clearly indicates an issue regarding Child's actions that substantially endangered Child's health or the health of another was raised. This issue was therefore tried by consent under

Trial Rule 15(B), and the juvenile court did not err in adjudicating Child as a CHINS on grounds different than those set forth in the CHINS petition.

## II.   Sufficient Evidence

[16]   CHINS proceedings are civil actions, and therefore, it must be proven by a preponderance of the evidence that a child is a CHINS as defined by statute. *In re L.C.*, 23 N.E.3d 37, 39 (Ind. Ct. App. 2015) (citing *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010)), *trans. denied*.  When we review a CHINS determination, we neither reweigh the evidence nor judge the credibility of the witnesses.  *Id.* We consider only the evidence that supports the juvenile court's decision and the reasonable inferences drawn therefrom.  *Id.* at 39-40.  We will reverse only upon a showing that the decision of the juvenile court was clearly erroneous. *Id.* at 40.

[17]   Child argues that the juvenile court erred in determining that she was a CHINS under CHINS 6 because there was insufficient evidence to support the adjudication.  Child specifically contends that the evidence did not support that she substantially endangered her own health or the health of another individual. She asserts that her actions were defiant and delinquent, but did not rise to the level of substantially endangering herself or others.

[18]   Pursuant to Indiana Code section 31-34-1-6,

> A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child substantially endangers the child's own health or the health of another individual; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Therefore, there were three elements that were required to be proven for the juvenile court to adjudicate Child to be a CHINS under CHINS 6: (1) Child was under the age of eighteen; (2) Child substantially endangered her own health or the health of another individual; and (3) Child needed care, treatment, or rehabilitation that she was not receiving and that she was unlikely to be provided or accept without the coercive intervention of the court. Child does not contend that there was not sufficient evidence to prove that she was under the age of eighteen or that she needs care, treatment, or rehabilitation that she is not receiving and that she is unlikely to receive without the coercive intervention of the court. We, therefore, only focus on whether there was sufficient evidence to prove that she substantially endangered her own health or that of another.

[19] Here, the evidence presented showed that Child, who was only sixteen at the time the CHINS case was initiated, had a history of running away from her placements. At the time of the pretrial conference on July 30, 2015, Child had run away from her cousin's home where she was placed after completing her

time at the Carmelite Home. During the hearing, the juvenile court spoke with Child on the telephone and ordered her to appear at the court, but Child refused. *Tr.* at 51-52. Child was still on the run and did not appear at the show cause hearing a week later; she also remained on the run at the time of the fact-finding hearing on November 6, 2015. At the fact-finding hearing, the transcript of the pretrial hearing, which reflected the refusal of Child to follow the juvenile court's order, was admitted into evidence. The juvenile court also took judicial notice of the fact that Child had five prior charges for being a runaway. The evidence that Child was on the run to avoid the juvenile court's and DCS's authority supported the juvenile court's determination that Child substantially endangered her health due to the fact that bad things could happen to a young girl out on her own trying to avoid authority.

[20] Additionally, the juvenile court took judicial notice of its own records that showed that Child had sixteen referrals to the juvenile court, was a respondent in a termination of parental rights case as to J., had been the subject of a previous CHINS case, had previously failed referrals for services, and had true findings for theft, resisting law enforcement, and modification of her probation. *Id.* at 158-59. Mother offered into evidence emails between FCM Smith and someone from Carmelite Home discussing Child's behavior while staying there. Father testified that Child was a threat to herself and others and in need of mental health treatment and that she had attempted suicide a couple of years prior to the hearing. *Id.* at 157-58. We conclude that, based on the evidence presented at the fact-finding hearing, it was proven by a preponderance of the

evidence that Child substantially endangered her own health or the health of another individual and that Child was a CHINS as defined by CHINS 6. The juvenile court did not err in adjudicating Child to be a CHINS pursuant to CHINS 6.

Affirmed.

Robb, J., and Barnes, J., concur.