## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 08 2019, 6:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy D. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of: S.G. (Child in Need of Services)

A.G. (Father) and M.G. (Mother),

*Appellants*,

v.

Indiana Department of Child Services,

*Appellee*.

November 8, 2019

Court of Appeals Case No.
19A-JC-1010

Appeal from the St. Joseph Probate Court

The Honorable Jason Cichowicz, Judge

The Honorable Graham C. Polando, Magistrate

Trial Court Cause No.
71J01-1810-JC-563

**Brown, Judge.**

[1] A.G. ("Father") and M.G. ("Mother," and together, "Parents") appeal the trial court's determination that S.G., born in January 2003, is a child in need of services ("CHINS") and its dispositional order. We affirm.

## Facts and Procedural History

[2] The Indiana Department of Child Services ("DCS") became involved with S.G. and his sister in 2012 when he was in third grade, the court found he was a CHINS in May 2012, and the case was closed in April 2013. DCS became involved with S.G. again when he was in eighth grade when Mother threw rocks at him and his friend's family called a hotline. The court found he was a CHINS in June 2016, and the case was closed in July 2017. In October 2018, DCS filed a petition alleging that S.G. is again a CHINS, and the court later ordered Parents to take reasonable steps to find mental health care for him. On January 14, 2019, the court ordered that S.G. be placed with a foster family.

[3] In February 2019, the court held a factfinding hearing at which it heard testimony from Dr. John Peterson, S.G., Family Case Managers Elizabeth Gibbs and Sheila LeSure ("FCM LeSure"), Court Appointed Special Advocate Brian Gates ("CASA Gates"), and Parents. According to Dr. Peterson, S.G. described years of an abusive dynamic in the home and reported that Mother would goad him to kill himself by hanging or drinking bleach, that she would break objects and strike him, and that she told him that she should have aborted him and would have him killed if they lived in India. He indicated that S.G.'s mood was fearful, S.G. expressed hopelessness, and he had no reason to believe that S.G. was being manipulative. S.G. testified that Mother hit and locked

Father out of the house when it was cold, Father slept under a storage shed, and she threatened to kill Father and him. S.G. testified that he was filling a bottle with water, Mother said that he did not deserve water and that it was hers and hit him on the back with a frying pan, he ran to the garage, and she locked the door and did not let him inside for the rest of the night. He testified that Mother always took their food upstairs and would not let him have any. S.G. testified that he did not want to return home, the last sixteen years have been the same, he has had countless therapy sessions, and he does not think anything can be done. He testified that Mother told him that, if he testified against her, she would kill him, Father, and herself.

[4] FCM LeSure recommended that S.G. participate in counseling to address trauma and not have visits with Parents and stated that Parents felt S.G. did not need counseling. She indicated that she visited S.G. at school and saw swelling where he was struck with a pan and that he flinched when a supervisor touched the area. She testified that S.G. disclosed emotional, verbal, and physical abuse and repeatedly requested to be removed from the home and said that he was not safe in the home. She stated that DCS had a meeting to discuss an informal adjustment, which Parents refused. CASA Gates testified that, after meeting with S.G. three times and speaking with his foster mother, the mother of his best friend, a director at his high school, his neighbor, and his sister, among others, he believed that S.G. was a CHINS. He testified that S.G. had a lot of anxiety about the proceedings and is very afraid of going home. He recommended that S.G. not return home, that S.G. and his sister emphasize

that they have been subjected to retaliation when they have gone home, and that he had concerns for S.G.'s safety and mental well-being. He stated that S.G.'s neighbor heard bloodcurdling yelling from Mother inside the home, and was afraid for S.G. He testified that S.G. does not want visitation and he did not recommend visitation.

[5] Mother testified that she never deprived S.G. of food and that she kept some snacks in her bedroom. She stated that she always said she was glad that S.G. is her son, S.G. was not honest, and the neighbor's allegations were false. Father testified that the rule in his house is that no one can go to bed angry or hungry. He said that he had an issue with the neighbor who had weekend parties. The court found that Parents were largely not credible, the picture they painted was far too rosy, and that S.G. is credible and has been the victim of physical abuse. It found that Parents withdraw and actively deprive S.G. of basic needs such as food and shelter, that as a result S.G.'s physical and mental condition is seriously impaired and endangered, and that he is a CHINS.

[6] DCS's predispositional report stated that S.G. is intelligent, insightful, and polite, gets along with peers and adults in the community, has friends at school, in the foster home is characterized as focused and respectful, has outstanding performance in his classes, and participates in soccer and tutoring. The report recommends that Parents complete psychological, psychiatric, and domestic violence evaluations and refrain from contact until the court orders otherwise. It states that out-of-home placement is appropriate, S.G. has established a trusting relationship with the foster placement, the foster home is willing to

work with providers to facilitate visitation with Parents as deemed appropriate by the court, S.G. should be protected from contact with Parents due to the nature of the case including emotional and physical abuse, and Parents should surrender S.G's birth certificate and passport.

[7] In April 2019, the court held a dispositional hearing at which family case manager Deborah Banghart indicated that she adopted the recommendations in the predispositional report as her testimony. Parents requested that S.G. be returned to them and argued they both had PhDs and are respectable citizens in the community and no criminal charges had been filed against them. They argued that they are very strict and that, because S.G. is in a foster home, he gets to socialize on the weekends, have his license, and go on trips. CASA Gates stated that he supports DCS's recommendations and that he does not support S.G. returning home. The court stated that Parents deny that any abuse occurred and blame S.G. for everything and that contact with Parents would cause S.G. harm. The court approved the services set forth in in the predispositional report, denied Parents' request that S.G. return home, and set a review hearing. The court stated in its dispositional order that remaining in the home would be contrary to S.G.'s welfare, he needs protection, and reasonable efforts were made by DCS to prevent removal, and it ordered Parents to complete psychological, psychiatric, and domestic violence evaluations and to refrain from any contact with S.G. until the court orders otherwise. Parents filed a motion to modify the dispositional order to remove the requirements that

they obtain psychiatric and domestic violence evaluations, which the court denied.

## *Discussion*

[8] Parents claim the trial court's CHINS determination is clearly erroneous, S.G.'s health was not endangered, he did not suffer any injury, and he was not struggling academically or deprived of basic necessities. They assert they were exercising parental discipline, that he ran away from home, that his punishment was not severe, and that his allegations defy logic. The State argues that the trial court's judgment is not clearly erroneous and that it had the opportunity to assess S.G. and Parents' credibility.

[9] We do not reweigh the evidence or judge the credibility of witnesses and consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *In re S.D.*, 2 N.E.3d 1283, 1286-1287 (Ind. 2014), *reh'g denied.* We apply the two-tiered standard of whether the evidence supports the findings and whether the findings support the judgment. *Id.* At the time, Ind. Code §§ 31-34-1-1 provided:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
>> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>>
>> (2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

(Subsequently amended by Pub. L. No. 198-2019, § 8 (eff. Jul. 1, 2019)). Ind. Code § 31-34-1-2 provides in part that a child is a CHINS if the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent and the child needs care, treatment, or rehabilitation that the child is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court. The CHINS statute does not require that a court wait until a tragedy occurs to intervene. *In re A.H.*, 913 N.E.2d 303, 306 (Ind. Ct. App. 2009). Because a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage. *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). The purpose of a CHINS adjudication is to protect children, not punish parents. *Id.* The resolution of a juvenile proceeding focuses on the best interests of the child, rather than guilt or innocence as in a criminal proceeding. *Id*.

[10] The trial court heard extensive testimony from S.G. and his DCS case managers and found that Parents were not credible, that S.G. was credible, and that his physical and mental condition is seriously impaired and endangered as a result of Parents' refusal to provide basic necessities such as food and shelter. To the extent Parents invite us to reweigh the evidence and judge the credibility of witnesses, we are unable to do so. *See In re S.D.*, 2 N.E.3d at 1286. The evidence as set forth above and in the record supports the trial court's findings

and determination that S.G. is a CHINS and that the coercive intervention of the court is necessary.

[11] Parents also argue that they should have visitation with S.G. Once a child is determined to be a CHINS, the court holds a hearing to consider alternatives for the child's care, treatment, placement, or rehabilitation, the participation of the parent, and the financial responsibility for the services provided, and it issues a dispositional decree. *See In re N.E.*, 919 N.E.2d at 106 (citing Ind. Code §§ 31-34-19-1, -10). Ind. Code § 31-34-21-5.5 provides that the department must make reasonable efforts to reunify families and that, in determining the extent to which reasonable efforts to reunify or preserve a family are appropriate, the child's health and safety are of paramount concern. CASA Gates and DCS recommended that Parents not have visitation until further court order, and the record reveals there is a concern of retaliation and S.G. does not want visitation. According to DCS, S.G. is traumatized, the foster parents are willing to facilitate visitation with Parents as deemed appropriate by the court, and S.G. should be protected from contact with Parents. The court noted that Parents deny that any abuse occurred and blame S.G. for everything, and appropriately found that S.G. needs protection and that contact with Parents would cause S.G. harm.

[12] For the foregoing reasons, we affirm the trial court's judgment.

[13] Affirmed.

Altice, J., and Tavitas, J., concur.