# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 15 2018, 10:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Luisa M. White
Luisa White Law, LLC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Matter of N.M. (Minor Child), | June 15, 2018 |
| M.Y. (Paternal Grandmother)[1] | Court of Appeals Case No. 17A-JC-3052 |
| *Appellant-Respondent,* | Appeal from the Tippecanoe Superior Court |
| v. | The Honorable Faith A. Graham, Judge |
| Indiana Department of Child Services, | The Honorable Tricia L. Thompson, Juvenile Magistrate |
| *Appellee-Petitioner.* | Trial Court Cause No. 79D03-1706-JC-138 |

---

[1] A.M. ("Father") and S.E. ("Mother") did not file briefs on appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal.

**Mathias, Judge.**

[1] M.Y. ("Grandmother") appeals the Tippecanoe Superior Court's order determining that Grandmother's thirteen-year-old grandson N.M. is a child in need of services ("CHINS"). Grandmother argues that the trial court erred in determining that N.M. is a CHINS raising three issues for our review, which we consolidate and restate as whether there was sufficient evidence to support the CHINS adjudication.

[2] We affirm.

## Facts and Procedural History

[3] N.M. was born to S.E. ("Mother") and A.M. ("Father") in 2003. Grandmother is N.M.'s paternal grandmother. Father and paternal Uncle ("Uncle") have lived with Grandmother for the past eight to ten years. Tr. p. 29. According to Father, Mother has not seen N.M. since he was six years old. *Id.* at 30. Mother has a history of substance abuse-related criminal offenses. *Id.* at 98.

[4] When N.M. was approximately two years old, Father was imprisoned for "breaking and entering." *Id.* at 31. Father has also been convicted of possession of marijuana and admits to current marijuana use. *Id.* While incarcerated, Father entered into an agreement with Grandmother, allowing her to care for N.M. *Id.* Grandmother has been N.M.'s caregiver for the majority of his life. *Id.* at 37–38.

[5] Grandmother admits that N.M. needs counseling, but she has not obtained counseling for N.M. on her own and has failed to take him to intake appointments. Appellant's App. p. 37. Grandmother claims she is unable to take N.M. to appointments due to lack of transportation, but she allowed Uncle to take her car and is able to find transportation to see her sons in Crawfordsville. *Id.*

[6] In May 2017, DCS received a report that N.M. was a victim of abuse and neglect, naming Father as the alleged perpetrator. *Id.* 19–21. Specifically, after N.M. refused to clean his room, he walked across the street to his great-grandmother's house. Tr. p. 24. Father followed N.M. and dragged him down two steps and across the street by his leg. *Id.* at 24–25. Father alleged that he asked multiple times while dragging N.M., if he "wanted to get up and walk now." *Id.* Father admits that it was "[p]robably not the best course of action . . . but it was the only option [N.M.] left [him] with." *Id.* at 25. As a result from being dragged across the street, N.M. suffered a bruise and scrapes. *Id.* at 26. Father stated that he does not want a relationship with N.M. "unless [he] is fixed." Appellant's App. p. 36.

[7] On June 12, 2017, DCS filed its petition alleging that N.M. was a CHINS because of neglect and abuse. *Id.* at 19–21. In its petition, DCS alleged that:

> 5. [Grandmother] believes the family and child [needs] services, and that [N.M.], specifically, needs help with behavioral issues.
>
> 6. [N.M.] participated in a forensic interview and disclosed that his father had drug [sic]him across a street for failing to clean his

room, and that []he suffered injuries to his right arm, buttocks, leg and fingers, which the Father had stepped on. [N.M.] was scared during the incident and was crying, and he is afraid to be around the Father.

*Id*. at 20.

[8]   On the same day, the court ordered N.M. to remain in Grandmother's home under conditions that DCS would conduct background checks on the Grandmother, Father, and the paternal Uncle, and daily drop-ins would occur. *Id*. at 14. Father was ordered to vacate the home immediately. *Id*. at 15. Grandmother failed to comply with the conditions by allowing Father to return to her home for brief periods. *Id.* at 37.

[9]   On September 26, 2017, the trial court held a fact-finding hearing and found that:

> [Grandmother] has been the primary caretaker of [N.M.] since he was two (2) years old as Father was incarcerated and mother has not been involved with [N.M.] for years.
>
> In June of 2017, the child lived with [Grandmother], Father and [Uncle]. One day while [Grandmother] was at work, Father asked [N.M.] to clean his room. [N.M.] left the home and went across the street to his great grandmother's home. Father followed [N.M.] across the street and drug [him] down two (2) steps and across the street by his leg. [N.M.] suffered injuries including bruises and scratches. This was the second incident of inappropriate discipline that resulted in injuries to [N.M.].
>
> Father admits that he will not quit using marijuana and that he does not want a relationship with [N.M.] unless [he] is fixed.

Father denies needing services but believes the child probably does.

[Grandmother] admits she has been having discipline issues with [N.M.] and that she babies him. [Uncle] and [N.M.] got into escalated arguments several times and [Grandmother] had to intervene. She also admits that Father's discipline has been inappropriate on two occasions. [Grandmother] indicated to DCS that she has fear [sic] of Father and that he was loud and aggressive in the home. DCS also observed [Uncle's] loud and angry behavior in the home. [Grandmother] did not ask [Uncle] or Father to leave the home for the safety of the child until DCS involvement. Even after DCS involvement, [Grandmother] allowed [Uncle] to return to the home until the court ordered that he leave the home of the child.

[Grandmother] admits that [N.M.] needs counseling but she has not obtained counselling for him on her own . . . and has not taken the child for the intake appointment. [Grandmother] blames lack of transportation for failure to obtain services but [Grandmother] allowed [Uncle] to take her car. Additionally, [Grandmother] finds transportation to Crawfordsville to see her sons.

* * *

[N.M.] need[s] care, treatment or rehabilitation that [he] is not receiving; and that it is unlikely to be provided or accepted without the coercive intervention of the court.

Appellant's App. pp. 36–37.

[10]   On October 18, 2017, the court issued an order adjudicating N.M. a CHINS. *Id*. at 36–38. The next day, DCS filed a petition for parental participation. On December 5, 2017, the court granted the petition for the parental participation and ordered Grandmother to:

1. Participate in home-based care management.

2. Comply with daily drop ins.

3. Complete a parenting assessment and follow all recommendations.

4. Maintain contact with DCS

5. Sign all releases of information[.]

*Id*. at 46. Grandmother now appeals N.M.'s adjudication as a CHINS.

## Discussion and Decision

[11] Our supreme court explained in *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010), that Indiana Code sections 31-34-1-1 through 31-34-1-11 specify the elements that DCS must prove in order to establish that child is a CHINS: (1) the child is under the age of eighteen; (2) one or more particular set or sets of circumstances set forth in the statute exists; and (3) the care, treatment, or rehabilitation needed to address those circumstances is unlikely to be provided or accepted without the coercive intervention of the court.

[12] In this case, the trial court found that N.M. was a child in need of services under Indiana Code sections 31-34-1-1 and 31-34-1-2. The first of these sections provides that a child is a CHINS if, before the child becomes eighteen years of age:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food,

clothing, shelter, medical care, education, or supervision; and

(2)    the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

I.C. § 31-34-1-1.

[13]    The second section provides that a child is a CHINS, if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

I.C. § 31-34-1-2.

[14]    "[T]he purpose of a CHINS adjudication is to protect children, not punish parents." *In re L.C.*, 23 N.E.3d 37, 39 (Ind. Ct. App. 2015), *trans. denied* (citing *N.E.*, 919 N.E.2d at 106). A CHINS adjudication is not a determination of parental fault but rather is simply a determination that a child is in need of services and is unlikely to receive those services without the court's intervention. *Id.* (citing *N.E.*, 919 N.E.2d at 105). Because CHINS proceedings

are civil in nature, DCS must prove by a preponderance of the evidence that a child is a CHINS as defined by the relevant statutes. *Id.*

[15] On appeal, we must determine whether the evidence presented supports the findings of the trial court, and second, whether the findings support the judgment. *In re T.S.*, 906 N.E.2d 801, 804 (Ind. 2009). We do not reweigh the evidence nor judge the credibility of the witnesses. *In re D.F.*, 83 N.E.3d 789, 796 (Ind. Ct. App. 2017). Instead, we consider only the evidence that supports the court's decision and reasonable inferences drawn therefrom. *Id.* We will reverse only upon a showing that the decision of the court was clearly erroneous. *Id.*

[16] In its order, the trial court adjudicated N.M. a CHINS because "[Grandmother] admits that [N.M.] needs counseling but she has not obtained counselling for him on her own . . . and has not taken the child for the intake appointment. [Grandmother] blames lack of transportation for failure to obtain services but [Grandmother] allowed [Uncle] to take her car." Appellant's App. at 37. Further, "[he] need[s] care, treatment or rehabilitation that [he] is not receiving; and that it is unlikely to be provided or accepted without coercive intervention of the court." *Id.*

[17] Grandmother argues that "DCS did not prove that [t]herapy was necessary." Appellant's Br. at 20. But, Grandmother admitted that N.M. needs therapy. Tr. p. 47 ("I think he could use some counseling"). Grandmother has not attempted to find a counselor for N.M. Further, the DCS case manager testified that

"[N.M.] needs some individual therapy to address some of the trauma within his relationships with his parents and his caregivers." *Id.* at 58. The evidence supports the trial court's finding that N.M. needs therapy, and Grandmother will not take him to counseling sessions without DCS involvement. Accordingly, N.M. was properly adjudicated a CHINS under Indiana Code section 31-34-1-1.

[18]  The trial court also concluded that N.M. is a CHINS under Indiana Code section 31-34-1-2. DCS proved that N.M.'s physical well-being has been endangered on multiple occasions. Grandmother attempts to argue that "isolated incidents of 'excessive discipline' do not constitute a CHINS finding." Appellant's Br. at 23. But Grandmother testified that prior to the incident where Father dragged N.M. across the street, Father "pulled [N.M.] off [Grandmother's] bed, picked him up and took him into the living room . . . and pulled his ear or something and it was bruised." Tr. pp. 39–40. According to the family case manager, Grandmother "stated that she knew that the way [Father] disciplined [N.M.] was unconventional but that she believed that he needed a parent . . . and [] that type of discipline specifically was concerning and harmful to [N.M.] and [Grandmother] stated she knew and that she had also felt fearful of her son for some time just because of his behavior in her home." Tr. p. 57. N.M. has stated he is "afraid to be around his Father, because he is aggressive." Appellant's App. p. 15.

[19]  Moreover, Grandmother is well aware that Father poses a danger to N.M.'s well-being. Grandmother told DCS about "an incident between Father and [N.M.]

and [N.M.] and [Uncle] that [she] thought maybe had been inappropriate, but [she] still allowed [N.M.] to stay in the house with them." Tr. p. 45. When asked why Grandmother had not asked Father or Uncle to leave the house, she responded, "[b]ecause they are my kids and they needed help." *Id.*

[20] Similarly, Grandmother has allowed Father back into the home after the most recent incident, even though the trial court ordered her to keep him away from the house. The record indicates that Grandmother understood Father was not supposed to return home but admitted that "he came back a few times[.]" *Id.* at 46. The DCS case manager stated, "I have concerns about [Grandmother's] ability to maintain appropriate boundaries with her adult children." *Id.* at 60. The evidence is sufficient to prove that N.M.'s physical and mental health are seriously endangered, that N.M. needs care, treatment and rehabilitation, which he is not receiving, and is unlikely to be provided without coercive intervention of the court.

[21] For all of these reasons, DCS proved by a preponderance of the evidence that N.M. is a CHINS under Indiana Code sections 31-34-1-1 and 31-34-1-2.

# Conclusion

[22] The trial court's order adjudicating N.M. a CHINS is supported by sufficient evidence. We therefore affirm the CHINS adjudication.

[23] Affirmed.

Riley, J., and May, J., concur.