## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 09 2018, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Roberta Renbarger
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

D.K.M. and A.M. (Minor Children)

A.D.M. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

August 9, 2018

Court of Appeals Case No.
18A-JC-672

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

The Honorable Sherry A. Hartzler, Magistrate

Trial Court Cause No.
02D08-1706-JC-465

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, A.D.M. (Mother) appeals the trial court's determination that her minor child, A.M. (Child), is a Child in Need of Services (CHINS).

We affirm.

# ISSUE

Mother presents one issue on appeal, which we restate as: Whether the trial court's order, adjudicating Child as a CHINS, is clearly erroneous.

# FACTS AND PROCEDURAL HISTORY

Around June 8, 2017, the Indiana Department of Child Services (DCS) received a report that Child, who was then three-years-old, had "crawled out the broken second story window and was on top of the porch." (Transcript p. 10). The following day, Child got out on the roof again, where he was found by law enforcement. At all times during these proceedings, Father was incarcerated.

On June 12, 2017, DCS Family Case Manager, Deborah McClintock (FCM McClintock), conducted a family assessment. Mother informed her that Child was "very hyperactive" and "almost impossible" to "supervise a hundred percent of the time." (Tr. p. 29). She also admitted that Child "had been up on the roof unsupervised." (Tr. p. 29). FCM McClintock observed the home to have sustained water damage and was concerned about the disorganization of

the residence and the "really large number of cats present" but the home "did meet minimum stand[ards] for cleanliness and it did have ample food and all working utilities." (Tr. p. 30). Mother refused to take a drug screen and stated "very adamantly that she felt she would not benefit from" DCS's services or any home-based services. (Tr. p. 30). When FCM McClintock returned to the home a couple of days later, Mother had fixed the broken window.

[6] On June 19, 2017, DCS filed its petition alleging Child to be a CHINS.[1] At the end of June 2017, Family Case Manager Ashley Johnson (FCM Johnson) met with Mother during a child and family team meeting to discuss services and to schedule a home visit. At the end of the meeting, Mother submitted a drug screen which returned positive for heroin metabolite and morphine. Mother was "very alarmed" at the result. (Tr. p. 34). "She said she had no clue how she could test positive for something such as heroin[.]" (Tr. p. 34). Mother was screened seven days later and again tested positive. Because of the positive screens, DCS removed the Child on July 19, 2017. DCS referred Mother for a diagnostic assessment and a substance abuse assessment. Mother completed the diagnostic assessment and she was recommended to participate in ongoing psychiatric medication and pain management, but Mother declined any further assistance for substance abuse.

---

[1] Initially, the CHINS petition was filed for both A.M. and his older brother, D.K.M. However, the court did not adjudicate D.K.M as a CHINS as he was seventeen years old.

[7]  FCM Johnson continued to test Mother for another eight screens and "each one has been positive for heroin and other substances[,]" such as fentanyl, hydrocodone, suboxone, and oxycodone. (Tr. p. 35). Mother testified that she has been using Percocet and hydrocodone for chronic pain as a result of degenerative disc disease, as well as muscle relaxers and anti-inflammatories. Mother explained that in May or June of 2017, she had visited a holistic healer who provided her with a "supplement" based on herbs to help with pain management and which she takes four to six times daily. (Tr. p. 14). She clarified that she was unaware that the supplement contained heroin until she tested positive during DCS's screens. However, since becoming aware of the heroin component, Mother has continued to use the supplement and although she tried to stop "cold turkey," she became ill and exhibited withdrawal symptoms. (Tr. p. 16). Mother has been taking suboxone to get clean but also takes heroin when she does not have suboxone available. She admitted that she participated in a suboxone treatment program at Clean Slate in Fort Wayne, Indiana, but has not signed a release for DCS to obtain information from the program. DCS is unaware of Mother's participation in services other than the suboxone program.

[8]  On December 7, 2017, the trial court conducted a fact-finding hearing. FCM Johnson testified that she remained concerned about the lack of supervision of the Child due to Mother's heroin use. She stated that "the substance use can impede on her ability to properly supervise [Child] especially with her expressing that he is very active and motivated[.] . . . [Child] is very

aggressive. Like I've gone to a visit and he's been aggressive, difficult to control with words, telling him no, . . . He's very vocal and needs a lot of redirection." (Tr. p. 44).

[9] On December 11, 2017, the trial court issued its order adjudicating Child as a CHINS. On February 18, 2018, after a dispositional hearing, the trial court entered its dispositional decree, ordering Mother to participate in services, substance abuse counseling, homebased services, and participate in a medication management service.

[10] Mother now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[11] Mother argues that the trial court's CHINS determination is not supported by the evidence. When determining whether sufficient evidence exists in support of a CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences therefrom. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). This court will not reweigh the evidence or reassess the credibility of the witnesses. *Id.* at 1286. When a juvenile court's order contains specific findings of fact and conclusions thereon, we engage in a two-tiered review. *In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App. 2014). First, we determine whether the evidence supports the findings, and then, we determine whether the findings support the judgment. *Id.* Findings are clearly erroneous when there are no facts or inferences drawn therefrom that support them. *Id.* A judgment

is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the resulting judgment. *Id.*

[12] CHINS proceedings are civil actions, and therefore, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). On review, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the juvenile court was clearly erroneous. *Id.*

[13] To meet its burden of establishing CHINS status, DCS must prove that the child is under eighteen years of age,

> (1) The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) The child needs care, treatment or rehabilitation that:
>
> (A) The child is not receiving; and
>
> (B) Is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1. Although the acts or omissions of one or both parents can cause a condition that creates the need for court intervention, the CHINS

designation focuses on the condition of the child rather than on an act or omission of the parents. *In re N.E.*, 919 N.E.2d at 105. "[T]he purpose of a CHINS adjudication is to protect children, not punish parents." *N.L. v. Ind. Dep't of Child Servs*, 919 N.E.2d 102, 106 (Ind. 2010).

[14] While not disputing the trial court's facts in its Order, Mother claims that the conditions which gave rise to the DCS investigation and involvement were fully resolved prior to the fact-finding hearing. She fixed the broken window and "she personally secured treatment in a suboxone program." (Mother's Br. p. 12). Accordingly, she denies that the coercive intervention of the court is needed as she "firmly believes that she has always provided for her children emotionally, physically, psychologically, and medically for the past twenty-two years." (Mother's Br. p. 13). Mother claims that "although there may be issues in her life, they are not issues that she requires assistance to address, but are issues she has and can address herself." (Mother's Br. p. 13).

[15] While we agree with Mother that the initial reason of DCS's involvement with the family was very quickly remedied by fixing the window, the Child's CHINS determination was solely based on Mother's drug use and inability to supply him with the necessary supervision. Since DCS became involved with the family and instigated drug screens, Mother tested positive for heroin eight times, with the most recent drug screen of September 11, 2017 showing the highest levels of all previous screens. Mother admitted to using heroin in lieu of medically prescribed pain medication. She also conceded that she used this supplement four to six times daily while caring for Child and continued to

ingest it after being made aware of the supplement's heroin component. At times, Mother not only tested positive for heroin but also for suboxone, which she was supposed to use to get clean, and fentanyl. During these proceedings, Mother not only adamantly refused DCS's help but also "doesn't think she needs a substance abuse treatment." (Tr. p. 9).

[16] Assessing the evidence as a whole, we note that "[p]arents who make positive changes in their lives should be applauded, rather than being subjected to the coercion of a CHINS finding." *Matter of E.K.*, 83 N.E.3d 1256, 1261 (Ind. Ct. App. 2017). As such, a CHINS finding should consider the family's condition not just when the case was filed, but also when it is heard. *In re S.D.*, 2 N.E.3d 1283, 1290 (Ind. 2014). Here, the record demonstrates that Mother did not make even a modicum of effort to alleviate DCS's concerns for the safety and supervision of the Child. Rather, Mother's drug screens were invariably positive and reflected increasing levels of substance abuse. While we empathize with Mother's situation, and despite DCS's urging and help, Mother never enrolled in a pain management program but rather chose to self-medicate in an unsafe manner. Accordingly, we agree with the trial court that the Child needs supervision that he is unlikely to receive without coercive intervention by the State.

## CONCLUSION

[17] Based on the foregoing, we hold that the trial court's order, adjudicating Child as a CHINS, is not clearly erroneous.

[18]     Affirmed.

[19]     Vaidik, C. J. and Kirsch, J. concur